**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**


| | |
|---|---|
| **JUNE KELLIE THOMPSON,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:19-cv-00960** |
| ) | **Judge Trauger/ Frensley** |
| **ANDREW M. SAUL, COMMISSIONER OF** ) | |
| **SOCIAL SECURITY ADMINISTRATION,** ) | |
| **Defendant.** ) | |


**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 19. Plaintiff has filed an accompanying Memorandum. Docket No. 20. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 24. Plaintiff has filed a Reply. Docket No. 25.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be **DENIED**, and that the decision of the Commissioner be AFFIRMED.

## I.    INTRODUCTION

Plaintiff protectively filed her application for Disability Insurance Benefits ("DIB") on August 16, 2016, alleging that she had been disabled since January 1, 2016, due to carpal tunnel syndrome, bilateral; latient [*sic*] autoimmune diabetes millitus [*sic*] in adult, type 1; breast cancer-

double masectomy [*sic*]; pancreatitis; adult ADD; depression; joint pain; anxiety; asthema [*sic*]; and gastesophageal [*sic*] reflux disease. *See, e.g.,* Docket No. 14, Attachment ("TR"), pp. 149, 151, 168. Plaintiff's application was denied both initially (TR 59) and upon reconsideration (TR 89). Plaintiff subsequently requested (TR 98) and received (TR 35) a hearing. Plaintiff's hearing was conducted on May 23, 2018, by Administrative Law Judge ("ALJ") David A. Ettinger. TR 35. Plaintiff and vocational expert ("VE"), Melissa Neil, appeared and testified. *Id.*

On September 12, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12. Applying the sequential review process, the ALJ found that although the Plaintiff could not perform her past work, she was not disabled because she retained the ability to execute jobs existing in significant numbers in the national economy. TR 27-28. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since January 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus, diabetic neuropathy, bilateral carpal tunnel syndrome, lumbar degenerative disc disease, status post left breast cancer, alcohol dependence, substance induced mood disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1256).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) except that she cannot more than occasionally climb; cannot more than frequently balance, stoop, kneel, crouch or crawl; cannot more than frequently reach overhead, handle or feel with either upper extremity; is limited to simple repetitive work; and cannot

maintain attention or concentration for more than two hours without interruption or for more complicated than simple work instructions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 28, 1964 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2016, through the date of this decision (20 CFR 404.1520(g)).

TR 17; 19-20; 27-28.

On April 20, 2017, Plaintiff timely filed a request for review of the hearing decision. TR 98. On August 27, 2019, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). In reviewing the decisions of

the Commissioner, courts look to four types of evidence:  (1) objective medical findings regarding

Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of

Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v.*

*Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

### B.      Proceedings at the Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving

his or her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. §423(d)(1)(A). "Substantial gainful activity" not only

includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and

work experience, any other relevant work that exists in the national economy in significant

numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or

whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42

U.S.C. §423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process summarized as follows:

(1)      If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)      If the claimant is not found to have an impairment which significantly limits his or her ability to work (" Asevere" impairment), then he or she is not disabled.

(3)      If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1]  If a listing is met or equaled, benefits are owing without further inquiry.

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

(4)    If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5)    The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere.

6

*See* 42 U.S.C. § 423(d)(2)(B).

###    C.    Plaintiff's Statement of Errors

Plaintiff contends that the ALJ: (1) rejected Plaintiff's subjective complaints of her pain without an adequate justification; (2) formulated Plaintiff's residual functional capacity ("RFC") in error because he failed to account for Plaintiff's description of her limitations; and (3) lacked substantial evidence for his decision because the VE relied upon an inaccurate hypothetical to form her conclusions. Docket No. 20. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

###    1.    Credibility and Subjective Complaints of Pain

Plaintiff argues that the ALJ erred when he rejected her descriptions of the intensity, persistence, and limiting effects of her symptoms because he did not provide an adequate

justification. Docket No. 20, p. 6-7. Plaintiff contends that, while the ALJ found in Plaintiff's favor on the first step of the credibility analysis by acknowledging that Plaintiff's medically determinable impairments could reasonably be expected to cause the described symptoms, the ALJ disregarded Plaintiff's testimony regarding her symptoms' intensity, persistence, and limiting effects. *Id.* Plaintiff argues that this was unreasonable because the record is consistent with her descriptions and even bolsters them. *Id.* at 7-14, *citing* TR 40-47; 161-63; 192-97; 213-14; 217; 330-31; 402; 431; 435-36; 441; 445; 449-50; 485-87; 493; 505; 509; 517; 521; 530; 532; 534; 541; 552; 580; 584-85; 588; 595; 599; 613; 615; 629; 633-36; 640; 655; 657; 702; 753; 758; 894; 897.

Additionally, Plaintiff asserts that the ALJ pointed to no contradictory evidence regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms. *Id.* at 8. Plaintiff argues that her symptoms should be considered because the Agency directs the ALJ to consider any reasonably accepted symptom-related functional limitation and restriction that is consistent with objective medical evidence. *Id.* at 6. Specifically, Plaintiff asserts that the ALJ failed to consider the consistency of third-party statements that support Plaintiff's descriptions of her limitations and entirely failed to discuss the letter from Plaintiff's former employer that spoke to her inability to work. *Id.* at 10-11. Beyond the third-party statements, Plaintiff disputes the ALJ's assessment that her daily activities are contradictory to her subjective complaints; rather, Plaintiff contends that her daily activities support her self-described work limitations. *Id.* at 13.

Defendant responds that the ALJ appropriately weighed Plaintiff's subjective complaints and found the complaints to be inconsistent with the objective medical record and other evidence. Docket No. 24, p. 4-15. Defendant maintains that the ALJ properly determined that Plaintiff's descriptions regarding her subjective complaints of pain are inconsistent with evidence in the record. Docket No. 24, *citing* TR 17-27. Additionally, Defendant argues that the ALJ gave proper

8

weight to state agency medical consultants and medical reports and also contends that Plaintiff failed to submit medical evidence addressing greater physical limitations. Docket No. 24, *citing* TR. 26. Defendant maintains that the ALJ reviewed the record in its entirety—medical opinions, medical treatment, and medical evidence—in finding that Plaintiff's allegations were inconsistent with the record. Docket No. 24, *citing* TR 17-27. Further, Defendant asserts that precedent establishes that an ALJ's credibility finding is mostly "unchallengeable." Docket No. 24, *citing Ritchie v. Comm'r of Soc. Sec.,* 540 F. App'x 508, 511 (6th Cir. 2013), *quoting Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-13 (6th Cir. 2010).

In her Reply, Plaintiff reiterates her argument that the medical record and testimony do not contradict Plaintiff's subjective complaints. Docket No. 25, p. 1-3. Plaintiff argues that her complaints are consistent with the record and that the ALJ failed to rely on contradictory evidence to explain his rejection of her testimony. *Id.* at 3. Plaintiff responds to Defendant's contention that ALJ's credibility findings are "virtually 'unchallengeable'" by arguing that the Agency has adopted a new ruling which directs ALJs' evaluations of subjective symptoms to be evidence-based assessments rather than character assessments. *Id.* at 2. Further, Plaintiff argues that Defendant is adding a *post hoc* rationalization for the ALJ's dismissal of evidence supporting Plaintiff's limitations and that the alleged *post hoc* explanation is unfounded. *Id.* at 3. Finally, Plaintiff asserts that Defendant's Response does not undermine Plaintiff's initial claim that the ALJ failed to consider evidence "favorable to Plaintiff's claim and contrary to his findings." *Id.* at 1-2.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations, including pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . . [T]here must be evidence of an underlying

> medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986), *quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 CFR §§404.1529, 416.929 ("statements about your pain or other symptoms will not alone establish that you are disabled . . . ."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("though Moon alleges fully disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)*, construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

Pursuant to 20 C.F.R. § 416.929(a), the ALJ must follow a two-part analysis to evaluate pain complaints when the symptoms form the basis of the disability claim. TR 20; *see e.g.*, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007). Plaintiff is correct that the ALJ found her symptoms could reasonably produce Plaintiff's symptoms of pain. TR. 22. Once the first step is met, as it was here, the ALJ then determines the intensity, persistence, and limiting effects of the symptoms on Plaintiff's ability to work. Here, Plaintiff contends the ALJ erred when he rejected her testimony on her subjective complaints of pain without an adequate explanation. Docket. No. 20, p. 7-8. The ALJ ultimately found that Plaintiff's descriptions of her symptoms regarding their intensity, persistence, and limiting effects were not entirely consistent with the objective medical record. TR 22.

The ALJ explained his reasoning for so finding as follows:

> In understanding, remembering, or applying information, the claimant has moderate limitations. The claimant alleged that she has difficulty remembering generally, understanding what is said to her, following instructions, going to doctor's appointments without reminders, taking medications without reminders, shopping and driving. However, the claimant also stated that she could perform simple maintenance, prepare meals, go to doctor's appointments, and take medications. In addition, the record shows that the claimant was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, and respond to questions from medical providers (Ex. 4E, 9 E & medical section).

> In interacting with others, the claimant has mild limitations. Here, the claimant alleged that she has difficulty engaging in social activities, getting along with others, dealing appropriately with authority, and spending time in crowds. However, according to her statements, the claimant is also able to attend church and live with others. Finally, the medical evidence shows that the claimant had a good rapport with providers and was described as pleasant and cooperative (Ex. 4E, 9 E & medical section).

> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that she has limitations in concentrating generally and focusing generally. On the other hand, the claimant said that she is also able to prepare meals, watch TV, use the internet, handle her own medical care, and attend church (Ex.

4E, 9 E & medical section).

Finally, the claimant has mild limitations in her ability to adapt or manage herself. The claimant asserted that she has difficulties dressing, bathing, and managing her mood. That said, the claimant also stated that she is able to handle self-care and personal hygiene, care for pets, and get along with caregivers. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene and no problem getting along well with providers and staff (Ex. 4E, 9 E & medical section).

. . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record for the reasons explained in this decision.

. . .

The claimant's testimony was only partially consistent with her treatment records. In March 2016, it was noted that no functional difficulties were reported (Ex. 3F/2). In June 2016, the claimant reported that she had started to walk, which had lowered her blood sugar (Ex. 4F/74). In September 2016, she reported exercising, either walking or in the pool (Ex. 4F/81). In May 2017, while in physical therapy, she stated that "she may return after she gets done with vacation" (Ex. 8F/29). Finally, in August 2017, it was noted that the plaintiff had no pain issues and no other new complaints, "specifically she denied fevers, chills, dyspnea, chest pain, bone pain or abdominal pain" (Ex. 9F/19).

. . .

I give great weight to the opinion of the consultants at the reconsideration level because their findings are well explained and consistent with the claimant's treatment records. I note that no medical source had opined that the claimant had limitations more severe than those included in my residual functional capacity finding. Lesser weight is given to the opinion of the consultants at the initial level because the evidence received into the record as well as the testimony after the initial determination establish greater limitation in the exertional level.

. . .

In November 2016, Larry F. Palmer, Ph.D., performed a psychological consultative examination on the claimant. The latter stated that although she had a driver's license, she no longer drove. While sitting in the lobby, she did not appear to have any behavioral issues. She was calm and quiet. She had no apparent difficulties

12

with ambulation. She described her typical day as staying at home and watching TV. She spent time with her family and friends and got along well with others. She did not like crowds. She attended church and sometimes went out to eat. She spent time on the internet, doing Facebook and reading her emails. She reported a history of alcohol abuse in the past. Dr. Palmer diagnosed the plaintiff with depressive disorder due to another medical condition. Dr. Palmer found that the claimant had mild limitations in all areas of mental functioning (Ex. 5F). I give partial weight to the opinion of Dr. Palmer to the extent that it is consistent with the residual functional capacity. However, the record demonstrates higher limitations.

In sum, the record documents the claimant's severe impairments. Consideration is given to these impairments as reflected in the residual functional capacity. However, the functional restrictions alleged by the claimant are not entirely consistent with the evidence, as they are found to be disproportionate to the clinical findings. The claimant's subjective complaints are accepted, as far as they are supported by the objective evidence and by the record as a whole. Her impairments are limiting, however, not disabling. The record is simply not consistent with the claimant's allegations of disability.

TR 18-19; 22; 26-27.

As can be seen, the ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 22-27. The ALJ's detailed articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.

13

*See Walters*, 127 F.3d at 531, *citing Bradley,* 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F.2d at 975.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately determined that the functional restrictions described by Plaintiff are not entirely consistent with the evidence; thus, the ALJ accepted the subjective descriptions of duration, intensity, and frequency only so far as they are substantiated by the sum of the record. TR 27. In making this determination, the ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations were proper. Therefore, this claim fails.

## 2.    Residual Functional Capacity ("RFC")

Plaintiff avers that the ALJ's formulation of the RFC does not logically connect to the evidence presented because the RFC fails to account for Plaintiff's descriptions of her work-place limitations. Docket No. 20, p. 4-6. Plaintiff argues that an RFC finding which does not consider all limitations arising from every one of Plaintiff's impairments is contrary to law. *Id.* at 17. Plaintiff claims that the ALJ's RFC formulation is contrary to law because he rejected her subjective complaints and his rejection is unreasonable as described above. *Id.* at 15.

Additionally, Plaintiff contends that the VE's conclusions cannot be considered as substantial evidence because the VE's testimony was founded on a flawed hypothetical which relied upon an erroneous RFC formulation. *Id.* at 17-18. Further, Plaintiff argues that the VE

opined that if Plaintiff's attention span was no more than 90 minutes, then there would be no light work for her in the national economy in significant numbers. Docket. 20, p. 16, *citing* TR p.56. Plaintiff asserts that she would likely be unable to concentrate for 90 minutes at a time and should be found disabled per the VE's conclusion. *Id.* at 9-12; 16, *citing* TR 55-56; 163; 193; 214; 217.

Defendant responds that the ALJ's formulation of the RFC was not erroneous and that the VE's conclusions regarding the ALJ's RFC-based hypothetical are considered substantial evidence. Docket No. 24, p. 14-16. Defendant argues that the ALJ must accept Plaintiff's testimony on her symptoms only so far as it is supported by the record in its entirety. *Id.* at 15. Additionally, Defendant asserts that the ALJ has the discretion to not accept Plaintiff's subjective complaints of pain when they are inconsistent with objective medical evidence or other evidence in the record. *Id.* at 15. Defendant maintains that when subjective complaints are inconsistent with objective medical evidence, the ALJ is within his discretion to formulate an RFC without including Plaintiff's subjective complaints of pain. *Id.* at 15.

In her Reply, Plaintiff reiterates that the ALJ's rejection of her descriptions regarding the intensity, persistence, and limiting effects of her symptoms when formulating the RFC was in error. Docket No. 25, p. 1.

During the hearing, the ALJ posed two hypotheticals to the VE along with follow up questions. TR 54; 56-57. The VE opined that the person in the ALJ's hypothetical could not perform Plaintiff's past work but could execute other jobs in the national economy given the person's ability to follow simple work instructions. TR 54-55. The ALJ first queried:

> Q.      If I were to consider a hypothetical worker who was 53 years
>         old, who had the same work experience as Ms. Thompson
>         [Plaintiff], who was able to perform light work, except that
>         the hypothetical worker could not more than occasionally
>         climb; could not more than frequently balance, stoop, kneel,
>         crouch, or crawl; could not more than frequently reach

overhead, handle or feel with either arm and hand; was limited to simple, repetitive work; and could not maintain attention or concentration for longer than two hours without interruption or for more complicated than simple work instructions. Would the hypothetical worker be able to perform the claimant's past work?

A.     No, Your Honor. I don't believe past work Would [*sic*] be available with those limitations.

Q.     And could you identify other jobs that the hypothetical worker could perform?

A.     Yes, Your Honor. An example would be a Marker. DOT 209 587-034. Light, SVP 2. Approximately 435,000 in the U.S. Cleaner. DOT 323687-014. Light, SVP 2. Approximately 225,000 in the U.S. Bottling Line Attendant. DOT 920.687-042. Light, SVP 1. Approximately 30,000 in the U.S.

TR 54.

The ALJ then modified the hypothetical question and enquired:

Q.     Would there be an impact on the ability to perform the jobs you identified if the hypothetical worker could not on a sustained basis carry out even simple work instructions?

A.     Yes, Your Honor. I don't believe there would be work available.

TR. 55.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce

16

your ability to do past work and other work.

20 CFR S 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) except that she cannot more than occasionally climb; cannot more than frequently balance, stoop, kneel, crouch or crawl; cannot more than frequently reach overhead, handle or feel with either upper extremity; is limited to simple repetitive work; and cannot maintain attention or concentration for more than two hours without interruption or for more complicated than simple work instructions.

TR 19-20.

In so finding, the ALJ considered medical evidence. Specifically, the ALJ stated:

> In December 2015, the claimant presented with concern over pancreatitis and diabetic ketoacidosis. She had little appetite for the past 2-3 days and had drank water [*sic*]; no alcohol for the past 6 weeks. Her nausea and vomiting was worse at night and she was unable to breathe. Her husband took her to the emergency room. Her glucose was 635 (Ex. 4F/18-19). Her presentation was consistent with acute pancreatitis complicated by diabetic ketoacidosis. The etiology of her pancreatitis was unclear. Her alcohol was undetectable. She was subsequently admitted in stable condition to the ICU (Ex. 4F/27). An intravenous contrast was performed, which showed acute pancreatitis and hepatic steatosis (Ex. 1F/ 9 & 12). The CT scan of the abdomen and pelvis revealed diffuse peripancreatic inflammatory stranding and fluid consistent with acute pancreatitis (Ex. 2F/23 & Ex. 3F/36). The abdominal sonogram showed minimal free fluid in the hepatorenal fossa; otherwise normal abdominal sonogram (Ex. 4F/29). The claimant stated that she was currently on Farxiga and Metformin for blood glucose control (Ex. 4F/22 & 24). She also reported that she did not regularly checked [*sic*] her insulin at home. During her admission, her A1c was 13.6—unknown baseline. She stated that she had been first diagnosed with diabetes mellitus type 2 two years ago and complained that her PCP did not keep a very close eye on her sugar level (Ex. 4F/37). Insulin drip was started for her diabetic ketoacidosis (Ex. 4F/22 & 24). At discharge, the claimant's Farxiga and Metformin were stopped, and she was prescribed Lantus, Lispro, Zetia, and Statin. The claimant was to follow with endocrinology as outpatient (Ex. 4F/46). The claimant was to receive insulin injection daily, eat a well-balanced diet and exercise (Ex. 4F/47-48). In March 2016, the claimant went for her diabetes follow-up at the endocrinology practice. She had been diagnosed with latent autoimmune diabetes mellitus in adult. No

functional difficulties were reported (Ex. 3F/1-2). In June 2016, she presented for management of her type 1 diabetes diagnosed in December 2015. She was previously diagnosed with type 2 diabetes in 2012, but then was found to actually have type 1. She had started to walk, which had lowered her blood sugar. Her A1c was 71 (Ex. 4F/4). In September 2016, the claimant's diabetes was uncontrolled. She reported that she was following a dietary program and was exercising, either walking or in the pool (Ex. 4F/81-82). In December 2016, medications for the claimant's diabetes were adjusted. Her A1c was elevated and her diabetes was complicated by possible neuropathy. The neurologist felt that the claimant's pain was more related to arthritis rather than diabetes neuropathy and referred her to rheumatology. The pain clinic was now following the claimant's treatment (Ex. 7F/5-6). She was diagnosed with type 1 diabetes mellitus without complications (Ex. 7F/12).

In addition, in August 2015, it was noted that the claimant's diffuse joint and muscle pain was likely secondary to her taking Tamoxifen, her cancer treatment. Now that she was off all narcotics, she was better (Ex. 4F/6). In February 2016, the claimant complained of bilateral hand swelling for 3 days (Ex. 3F/20). The pain awakened her at night and both her hands and fingers were swollen. The symptoms improved during the day. Endocrinologist was called for an evaluation (Ex. 4F/53). The bilateral upper extremity venous Doppler showed no findings of deep venous thrombosis of either extremity (Ex. 1F/5, 3F/21 & 59 & 4F/58). The x-rays on the bilateral hands showed no fracture or malalignment and the soft tissues were unremarkable (Ex. 3F/20 & 4F/57). The films did not show any signs of osteoarthritis or bony abnormalities. Given her history of cancer, a US venous Doppler was performed to exclude a deep vein thrombosis. It was negative. The doctor suggested that she removed [sic] her rings, but she was unable to get them off. Ultimately, they were cut off given the hand swelling and reports of worsening swelling at times. Her symptoms seemed most consistent with rheumatologic etiology and an outpatient rheumatology evaluation was recommended (Ex. 4F/56). In March 2016, the claimant reported bilateral hand numbness, pain and swelling, which occurred especially when she was doing things at home. The pain occurred every day since she started taking insulin 3-4 weeks ago (Ex.4F/63). She was diagnosed with treatment induced diabetic neuropathy (Ex. 4F/64).

In April 2016, she had noted for some time tingling, numbness and swelling in her hands, mostly at night. All fingers seemed affected. The joint[s] also swelled and ached when she moved them. The examination showed that there was some joint enlargement in the hands, but the claimant had intact sensation and strength throughout the upper extremities. The motor nerve conduction study demonstrated mild median mononeuropathy at the wrist (carpal tunnel syndrome) on each side. There was no evidence of an ulnar mononeuropathy on either side (Ex. 3F/6-7 & 18-19). In May 2016 the claimant wanted to get a refill on Hydrocodone because she was currently out of her pain medication. She reported constant aching pain in the joints of her fingers and wrist as well as her knees and back. She was diagnosed with multiple joint paint (Ex. 3F/14-15). In June 2016, what was believed to be

neuropathy in the claimant's hands was determined to be carpal tunnel syndrome (Ex 4F/74). In December 2016, the examination of the claimant's bilateral hands at the pain clinic showed a slightly decreased sensation to light touch. There was no evidence of swelling or edema (Ex. 7F/1).

In February 2017, the claimant presented with symmetric arthritis. She was concerned about her hands and having joint pain for about 2 years. She typed all day and a year ago, she had to have her rings cut off. She thought that this happened prior to taking insulin. Swelling preceded the pain. When she used her fingers repetitively, the swelling would start, but it typically occurred at night. Massage and heat helped (Ex. 7F/1). The claimant had evidence on examination of osteoarthritis in her joints, but no swelling. Given these findings, it was unlikely that she had rheumatoid arthritis, which was her primary concern. It was most likely that her symptoms were a sequalae [sic] of her poorly controlled diabetes in combination with her known carpal tunnel syndrome. She was diagnosed with symmetric arthritis (Ex. 7F/3). In October 2017, the claimant complained of having problem [sic] with hand swelling and numbness. She had wrist splints when she had breast cancer and had tried wearing them again, which somewhat helped. She noted her symptoms worsening when her blood pressure was high (Ex. 9F/5). The EMG study revealed moderate bilateral median mononeuropathy at the wrist (carpal tunnel syndrome) affecting only sensory fibers. The ulnar studies were normal (Ex. 9F/3).

Further, the claimant, who had been diagnosed with lumbar spondylosis, received treatment through the pain clinic. Her back pain appeared likely 2/2 facet arthropathy. The pain film imaging demonstrated diffuse degenerative changes with spondylosis (Ex.7F/9). The August 2016 x-rays showed degenerative arthritic changes throughout the lumbar spine (Ex. 7F/11). The claimant wanted to undergo conservative treatment at this time and physical therapy referral was provided. She was put on a trial of Diclofenac and Tizanidine as needed for back pain (Ex. 7F/9). She was diagnosed with spondylosis without myelopathy or radiculopathy, lumbosacral region (Ex. 7F/12). The record reflects that, from April 2017 through May 2017, the claimant attended physical therapy for lumbar and cervical pain and stiffness as well as for the tingling and swelling in her hands (Ex. 8F). The claimant stated that she may return after her vacation (Ex. 8F/29).

In addition, in April 2008, a mammogram of the left breast revealed several bilateral simple cysts and small groupings of micro calcification in the upper outer left breast. A biopsy was recommended (Ex. 1F/15). In May 2008, the claimant underwent a left breast lymphoscintigraphy injection for intraoperative sentinel lymph node localization (Ex.3F/33). She then underwent a left and right total mastectomy and insertion of breast tissue expander (Ex. 7F/6).

. . .

She was now off all narcotics for her pain and was no longer seeing the pain clinic. She lost weight, exercised more and was now off Metformin. She had no issues

with her breast implants. She came for refills (Ex.4F/5-6). In December 2015, the x-rays of the chest showed that there was prominent density overlying the lung bases related to bilateral mammary prostheses. The lungs were clear, and the heart was normal. There was no acute cardiopulmonary processes (Ex.2F/5 & 26). The claimant's history of breast cancer was currently in remission. She had been seen in 2008 by the cancer symptom management clinic and had been managed with high dose [*sic*] of opioids. Since then, she had been weaned off of them with the exception of low dose of Lortab in August 2016 (Ex. 7F/9).

. . .

In sum, the record documents the claimant's severe impairments. Consideration is given to these impairments as reflected in the residual functional capacity. However, the functional restrictions alleged by the claimant are not entirely consistent with the evidence, as they are found to be disproportionate to the clinical findings.

TR 22-27.

The ALJ also considered the medical opinion evidence, stating:

As for the opinion evidence, State Agency consultants reviewed the evidence and determined at the initial level that the claimant was able to lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk and sit 6 hours in an 8-hour workday; frequently climb ramps/stairs and occasionally ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch and crawl; and frequently finger, handle and reach overhead bilaterally with both upper extremities (Ex. 3A). At the reconsideration level, the consultants determined that the claimant was able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk and sit 6 hours in an 8-hour workday; occasionally climb ramps/stairs and ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch and crawl; frequently reach bilaterally overhead; and frequently finger and handle bilaterally with both upper extremities (Ex. 4A).

I give great weight to the opinion of the consultants at the reconsideration level because their findings are well explained and consistent with the claimant's treatment records. I note that no medical source had opined that the claimant had limitations more severe than those included in my residual functional capacity finding. Lesser weight is given to the opinion of the consultants at the initial level because the evidence received into the record as well as the testimony after the initial determination establish greater limitation in the exertional level.
. . .

I give partial weight to the opinion of the State Agency consultants' opinion to the extent that it is consistent with the residual functional capacity. However, the record

20

demonstrates higher limitations in concentration/persistence/pace.

> In November 2016, Larry F. Palmer, Ph.D., performed a psychological consultative examination on the claimant. The latter stated that although she had a driver's license, she no longer drove. While sitting in the lobby, she did not appear to have any behavioral issues. She was calm and quiet. She had no apparent difficulties with ambulation. She described her typical day as staying at home and watching TV. She spent time with her family and friends and got along well with others. She did not like crowds. She attended church and sometimes went out to eat. She spent time on the internet, doing Facebook and reading her emails. She reported a history of alcohol abuse in the past. Dr. Palmer diagnosed the claimant with depressive disorder due to another medical condition. Dr. Palmer found that the claimant had mild limitations in all areas of mental functioning. (Ex. 5F).

TR 26-27.

> The ALJ also considered Plaintiff's medical treatment records, stating:

> The claimant's testimony was only partially consistent with her treatment records. In March 2016, it was noted that no functional difficulties were reported (Ex. 3F/2). In June 2016, the claimant reported that she had started to walk, which had lowered her blood sugar (Ex. 4F/74). In September 2016, she reported exercising, either walking or in the pool (Ex. 4F/81). In May 2017, while in physical therapy, she stated that "she may return after she gets done with vacation" (Ex. 8F/29). Finally, in August 2017, it was noted that the claimant had no pain issues and no other new complaints, "specifically she denied fevers, chills, dyspnea, chest pain, bone pain or abdominal pain" (Ex. 9F/19).

TR 26.

While Plaintiff is correct that sporadic daily activities may not indicate what a claimant can do on a sustained basis, particularly where the claimant experiences periods of remission and exacerbation, the ALJ should consider a claimant's reported daily activities when rendering an RFC determination. *See, e.g., Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992).

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including Plaintiff's reported level of activity, and ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations: "she cannot more than

occasionally climb; cannot more than frequently balance, stoop, kneel, crouch or crawl; cannot more than frequently reach overhead, handle or feel with either upper extremity; is limited to simple repetitive work; and cannot maintain attention or concentration for more than two hours without interruption or for more complicated than simple work instructions." TR 19-20. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more. Accordingly, this claim fails.

### 3. Substantial Evidence

Plaintiff asserts that the VE's conclusions cannot serve as substantial evidence to support the ALJ's finding because the hypothetical, which the VE used in coming to her conclusions, reflected an RFC that was formulated in error. Docket No. 20, pp. 17-18. Thus, Plaintiff argues that the resulting hypothetical is also in error and does not accurately reflect Plaintiff's limitations in the workplace. *Id.* at 17.

Additionally, Plaintiff contends that the ALJ failed to properly weigh statements from third parties including statements her former employer, mother, and husband. *Id.* at 9-10. Plaintiff argues that the ALJ failed to acknowledge that the three statements bolster Plaintiff's description of her limitations. *Id.* at 9-10. Specifically, Plaintiff asserts that the ALJ "provided no analysis of the consistency between these, which is part of the analysis required by 20 C.F.R. § 404.1529(c) and SSR 16-3p. Moreover, he never even acknowledged the letter from her former manager, which patently supports her testimony regarding her inability to work." *Id.* 10-11. Plaintiff argues that the ALJ's failure to acknowledge and analyze these third-party statements "undermine[s] his conclusion that her statements are not consistent with the record." *Id.* at 10-11.

Defendant responds that the ALJ's decision was supported by substantial evidence in the record and that the ALJ correctly weighed the subjective complaints consistent with the medical

evidence, medical opinion, and medical treatments when determining Plaintiff's RFC.  Docket No. 24, pp. 3-15. Defendant further argues that the RFC did not have to include Plaintiff's limitations that the ALJ found inconsistent with the record and that there was no error in using the ALJ's hypothetical as a basis for the VE's conclusions. *Id.* at 15.

Regarding the third-party statements, Defendant contends that the ALJ properly considered the third-party statements and further argues that the ALJ does not need to discuss every piece of evidence in the record. *Id.* at 13-14. Additionally, Defendant avers that the "statements are consistent with Plaintiff's allegations, but, like Plaintiff's statements, th[ey] are inconsistent with the record as a whole." *Id.* at 14.

Plaintiff replies that there cannot be substantial evidence supporting the ALJ's finding because the ALJ did not address evidence like Plaintiff's former employer's letter, which Plaintiff argues supports her described limitations, when formulating Plaintiff's RFC. Docket No. 25, p. 3-4.

The ALJ is not required to discuss every piece of evidence before her. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508, *citing Loral Def. Sys-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999); *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 664-65 (6th Cir. 2005). Social Security Ruling ("SSR") 16-3p does not require that the ALJ's opinion include a discussion of third-party opinions in the record. 2013 WL 1119029, at *7 (March 16, 2016). SSR 16-3p, in part, is as follows:

c.     Non-Medical Sources

Other sources *may* provide information from which we *may* draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms. Examples of such sources include public and private agencies, other practitioners, educational personnel, non-medical sources such as family and friends, and agency personnel . . . . The adjudicator will consider any personal observations of the individual in

terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file.

(emphasis added).

As demonstrated, SSR 16-3p has no language requiring an ALJ to include in his opinion an analysis of third-party statements. Rather, the ALJ must consider such nonmedical evidence only so long as it can "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

Plaintiff also relies on 20 C.F.R. § 404.1529(c) in her argument that the ALJ's failure to analyze statements made by her former employer, her mother, and her husband undermines his conclusion. *See* Docket No. 20, p. 10. However, 20 C.F.R. § 404.1529(c) does not require that the ALJ include third-party statements in his opinion. 20 C.F.R. § 4040.1529(c) provides, in pertinent part:

> Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that your medical sources or nonmedical sources provide about your pain or other symptoms . . . . is also an important indicator of the intensity and persistence of your symptoms. Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can *reasonably be accepted as consistent with the objective medical evidence and other evidence*, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled.

(emphasis added).

Moreover, an ALJ's failure to discuss evidence like third-party statements in his opinion does not mean that the ALJ failed to consider the evidence. *See Thacker*, 99 Fed. App'x at 664-65. "An ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party; and an ALJ is not required to make explicit credibility findings as to each conflicting testimony so long as his factual findings as a whole show he

24

implicitly resolved such conflicts." *Potter v. Colvin*, No. 1:12-cv-00144, 2015 WL 3486126, at *7 (N.D. Ohio, Jun. 2, 2015), *citing Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Thus, the ALJ has no obligation to analyze third-party statements in his opinion to meet his burden of considering nonmedical sources.

While the former employer statement at issue was not discussed by the ALJ in the decision, it is clear that the ALJ considered the statement at the administrative hearing. TR. 40-41, 46. The ALJ was directed specifically to the document in the hearing. *Id.* The ALJ's finding that Plaintiff was unable to perform her prior work is consistent with the employer's statement. TR. p. 27. Finally, the ALJ did discuss the third-party statements of Plaintiff's husband and mother in the decision indicating an awareness of and consideration of third-party opinion evidence. TR. 22. As a result, the failure of the ALJ to discuss the former employer's statement in the decision is not grounds for relief.

As demonstrated in the statements of error above, the record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." Additionally, the ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and the VE. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that that Plaintiff's subjective complaints of pain are somewhat inconsistent with the record as a whole. *See* TR 19-27; 45-47; 49-52; 80; 82; 84; 193; 196; 216-17; 318; 434; 436; 452; 470-73; 476-79; 487. Plaintiff's argument that the ALJ's decision did not rest on substantial evidence is centered on the reliability of the ALJ's formulated RFC which has been discussed above. Docket No. 20, pp. 4-7. VE testimony given in response to an ALJ's hypothetical constitutes substantial evidence when the hypothetical

25

question accurately describes the Plaintiff in all noteworthy respects. *See Felisky*, 35 F. 3d at 1036. Given that, after considering the medical evidence including Plaintiff's treatment records, consultative exams, and hospital records along with testimonial evidence from third-parties and the Plaintiff herself, the ALJ found Plaintiff's subjective complaints to be less than credible, the ALJ was within his discretion in formulating hypothetical questions based on the objective evidence. TR 19-27. Accordingly, Plaintiff's argument that the ALJ's opinion is not founded on substantial evidence is unavailing.

## IV.     RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 19) be **DENIED** and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**